IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**PAUL M. STOKES,**

**Plaintiff,**

**vs.**

**TERRY G. KIPPING, Individually and as
the Mayor of the City of Waterloo, Illinois,
*et al.*,**

**Defendants.**                                                                 **No. 04-CV-00334-DRH**

### MEMORANDUM & ORDER

**HERNDON, District Judge:**

### I. INTRODUCTION AND BACKGROUND

This matter comes before the Court in consideration of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. (Doc. 29.) On October 12, 2004, the Court entered an Order in this matter granting in part and denying in part a dismissal without prejudice of Plaintiff's four-count Complaint, allowing Plaintiff additional time in which to file his amended complaint. (Doc. 27.) On October 22, 2004, Plaintiff filed his Amended Complaint. (Doc. 28.)

In Plaintiff's Amended Complaint, Counts I and II remain § 1983 claims against the City of Waterloo (the "City"), the Mayor, and the members of its City Council, alleging a deprivation of a property interest in Plaintiff's job as Chief of Police without proper procedural due process of law (Doc. 28, Count I, ¶¶ 12-42) and deprivation of a liberty interest without proper procedural due process of law (*Id.*,

Count II, ¶¶ 43-57). Count I is subdivided into the following sections: (A) Property Interest Based on Ordinance and Statute; (B) Property Interest Based Upon Implied Contract; and (C) Property Interest Based on Custom & Practice. Plaintiff amended his Complaint by adding further factual allegations regarding the existence of an implied contract of employment, and allegations regarding the customs and practices of the City. Counts III and IV are the same state law claims as previously plead in Plaintiff's initial Complaint. Count III alleges retaliation for filing a workers' compensation claim. Count IV alleges fraud. As damages, Plaintiff continues to seek reinstatement to his position as Chief of Police of the City of Waterloo, compensatory damages, punitive damages and attorneys' fees and costs.

As the background facts of this matter were previously recounted in detail in the Court's Order regarding Defendants' Motion to Dismiss Original Complaint (Doc. 27), only a brief summary will be provided herein. Plaintiff was appointed Chief of Police of the City Waterloo on January 1, 2000. (Doc. 28, ¶ 2). On March 6, 2003, Plaintiff alleges he was injured while performing his duties as Chief of Police and that these injuries forced him to take medical leave and file a workers' compensation claim. (*Id*. at ¶¶ 59-63.)

On March 20, 2003, there was a city meeting in which Defendant Terry Kipping, as candidate for mayor, stated that if he were elected, Plaintiff would be discharged as Chief of Police. (*Id*. at ¶ 64.) On April 2, 2003, Defendant Kipping was elected as Mayor of City of Waterloo, Illinois. (*Id*. at ¶ 4.) At that time, Defendants Leonard Loerch, Linda Luhr, Charles Metzger, Steve Notheisen, Mike Augustine, and

Jim Hopkins were duly elected Members of the City Counsel of Waterloo.[1] (*Id*. at ¶ 5.) Plaintiff alleges Defendants discussed his discharge at a public meeting, where Defendants were advised by the City Attorney that Plaintiff could not be discharged without written charges filed against him, followed by a hearing giving Plaintiff the opportunity to be heard in his own defense. (Doc. 28., ¶ 7.) Plaintiff alleges that despite their counsel's legal advice, and without any charges, notice, or hearing, Mayor Kipping sent him a letter dated May 16, 2003 (Ex. A to the Amended Complaint), discharging him from the position as Chief of Police of the City of Waterloo. (*Id*. at ¶ 8.)

On November 8, 2004, Defendants filed their Rule 12(b)(6) Motion and supporting memorandum to Dismiss Counts I through IV of Plaintiff's Amended Complaint. (Docs. 29 & 30.) Plaintiff, in turn, filed his opposition in response on December 7, 2004. (Doc. 32.) For the reasons stated below, the Court **GRANTS** Defendants' motion.

## II. ANALYSIS

### A. MOTION TO DISMISS STANDARD

When considering a motion to dismiss pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**, the Court must determine whether the Plaintiff's Amended Complaint states a claim upon which relief can be granted. **See Fed. R.**

---

[1] Defendant Clyde Heller, although listed as a defendant and a then member of the City Council of Waterloo, was not specifically mentioned in any of Plaintiff's allegations in his Amended Complaint.

**Civ. P. 12(b)(6).** As part of its scrutiny, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff. ***See Szumny v. Am. Gen. Fin.,* 246 F.3d 1065, 1067 (7th Cir. 2001)(applying this standard to a Rule 12(b)(6) motion)**. The purpose of a motion to dismiss is not to decide the merits of the challenged claims but to test the sufficiency of the complaint. ***Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n.1 (7th Cir. 1996)**. A court will grant a motion to dismiss only if it is impossible for the plaintiff to prevail under any set of facts that could be proven consistent with the allegations. ***Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000)**.

    B.    **COUNT I - DEPRIVATION OF A PROPERTY INTEREST WITHOUT DUE PROCESS**

Count I of Plaintiff's Amended Complaint is subdivided into the following sections: (A) Property Interest Based on Ordinance and Statute; (B) Property Interest Based Upon Implied Contract; and (C) Property Interest Based on Custom & Practice. Each subpart will be separately addressed.

    1.    **Property Interest Created by Ordinance & Statute**

In its Order regarding the Defendant's initial Motion to Dismiss filed in this case, the Court found that Illinois statutory and pertinent provisions of the City Code/Ordinances did *not* grant Plaintiff a property interest in his position as Chief of Police. (*See* Doc. 27, p. 7.) Because Plaintiff never obtained a property interest in his employment as Chief of Police, there was no violation of his due process rights for not previously receiving either written charges and/or a hearing before the mayor

appointed another officer to serve as chief. In fact, the only reason this claim was not dismissed with prejudice outright was because Plaintiff appeared to have alleged a property right created by implied contract/promise. (*Id.*) Therefore, the Court allowed Plaintiff to amend his Complaint in this regard. However, Plaintiff attempts to take a second bite of the apple in again pleading the same theory of property right created by statute/ordinance. Plaintiff's legal theory in this respect has already been ruled upon by the Court and thus, the Court must determine whether this portion of Plaintiff's claim stated in Count I of his Amended Complaint has become law of the case.

        **(a)**    <u>**Law of the Case**</u>

"The doctrine of law of the case limits reconsideration of rulings by the same or a lower court . . . ." **Native American Arts, Inc. v. The Waldron Corp., 399 F.3d 871, 873 (7th Cir. 2005) (citations omitted)**. The doctrine operates to allow "a ruling made in an earlier phase of litigation [to] control[] the later phases unless a good reason is shown to depart from it," such as "an intervening change in law or other changed or special circumstance." **Tice v. American Airlines, Inc., 373 F.3d 851, 854 (7th Cir. 2004) (citations omitted); *see also* U.S. v. Story, 137 F.3d 518, 520 (7th Cir. 1997); Napoli v. Sears, Roebuck and Co., 858 F. Supp. 101, 102 (N.D. Ill. 1994).**

In his Amended Complaint, Plaintiff has not plead any further substantive factual allegations, nor has he made light of a change in law or

circumstance in his opposition brief to warrant the Court to depart from its previous finding that Plaintiff did not have a property right in his job, as created by statute or ordinance.[2] Plaintiff basically rehashes his previous arguments.[3] Because the Court previously found that neither statute nor ordinance gave Plaintiff a property right in his employment as Chief of Police, the ruling has become law of the case. Further, because Plaintiff has failed to plead a intervening change in law or other changed or special circumstance, Plaintiff's amended claim in this regard must be dismissed.

### 2. Property Interest Created by Implied Contract

Plaintiff also alleges that there was an implied contract giving him a property interest in his employment as Chief of Police. (Doc. 28, ¶¶ 15, 27-33.) Specifically, Plaintiff alleges that the implied agreement concerned the amount of compensation and benefits Plaintiff would receive as Chief, in exchange for his performance (but term of service was never specifically discussed). (*Id*. at ¶ 28.) Plaintiff also alleges that there was an implied understanding between himself and

---

[2] Plaintiff also appears to argue constitutional ramifications if the Court decides that the statute allowing his removal without procedural due process is valid. (Doc. 32, p. 5, n.2.) However, this is not within the scope of the pleadings in Plaintiff's Amended Complaint and therefore, would not be properly addressed in considering Defendants' Motion to Dismiss.

[3] However, Plaintiff does add the additional allegation to his Amended Complaint that Ordinance No. 1116, § 30-2-1 defines him as a member of the City police department, and as such, he falls within the scope of **65 ILCS 5/10-2.1-17** (requiring removal for cause, written charges and prior hearing). However, Plaintiff fails to note that **65 ILCS 5/10-2.1-17** *clearly excepts* the chief of police from this process, instead allowing the appointing authority to remove the chief with approval of the corporate authorities. (*See* Doc. 27, p. 7, for the Court's previous determination that this exclusion exists.) In addition, "removal" of the chief more appropriately signifies an action that is taken during the term of the chief's tenure, which by statute may not exceed the term of the mayor who made the appointment. ***See* 65 ILCS 5/3.1-30-5.** It is reasonably inferred that under the language of **65 ILCS 5/10-2.1-17**, the appointing authority could not "remove" the chief of police if he was no longer in office (and therefore no longer possessing the required authority).

the authorities for the City of Waterloo that he would be removed as Chief only due to poor work performance. (*Id*. at ¶¶ 29-32.)

As a matter of law, Plaintiff's claim of deprivation of property interest without proper due process based upon a theory of implied contract fails. "An implied contract may receive constitutional protection if state law recognizes its validity." **Malcak v. Westchester Park Dist., 754 F.2d 239, 242 (7th Cir. 1985) (finding that there was no legal basis for finding a contract and therefore, as a matter of law, Plaintiff did not have a property interest in employment based upon an implied contract)**. A legitimate claim of entitlement requires "mutually explicit understandings," **Crull v. Sunderman, 384 F.3d 453, 464 (7th Cir. 2004)**. Basically, this implied contract must be "more than an abstract need or desire or a unilateral expectation." **Board of Regents v. Roth, 408 U.S. 564, 577 (1972)**.

The court has determined that it is law of the case that Plaintiff has no property right in employment as Chief of Police created by either state statute or municipal code/ordinance. Therefore, an offer of employment as Chief of Police that exceeded the statutory term, as defined in **65 ILCS 5/3.1-30-5,** would be invalid per se. Even if the Court were to accept as true Plaintiff's allegations that City Board members entered into a valid implied contract with Plaintiff for his employment as Chief of Police, such contract would be null and void as against state and municipal

law.[4] **See Pleva v. Norquist, 195 F.3d 905, 915 (7th Cir. 1999) (finding that when an implied promise of continued career employment "contravenes the express language" of the municipal code, it is invalid and cannot create a property interest," thereby affirming the district court's dismissal of this claim) (citation omitted).**

Moreover, even assuming that Plaintiff successfully demonstrated that statutory or municipal law allowed for Plaintiff to remain as Chief of Police beyond the term of his appointing authority, Plaintiff has failed to sufficiently plead that there were mutually explicit understandings between himself and the City in order to create a valid implied contract. **Kiddy-Brown v. Blagojevich, 408 F.3d 346 (7th Cir. 2005) (finding that Illinois code excepted Plaintiff's position as warden from right to hearing before termination and therefore did not convey a property interest for purpose of due process; also found that alleged oral promises of**

---

[4] **65 ILCS 5/3.1-30-5(c)** states, in pertinent part,
> The city council or board of trustees of a municipality, by ordinance not inconsistent with this Code, may prescribe the duties, define the powers, and fix the term of office of all appointed officers of the municipality; but the term of office, except as otherwise expressly provided in this Code, shall not exceed that of the mayor or president of the municipality.

The Chief of Police is deemed a municipal officer by the language of **65 ILCS 5/10-2.1-4**, which states, in pertinent part:
> The board of fire and police commissioners shall appoint all officers and members of the fire and police departments of the municipality, including the chief of police and the chief of the fire department, unless the council or board of trustees shall by ordinance as to them otherwise provide . . .

**65 ILCS 5/10-2.1-4**, in turn, has been adopted by the City under **§ 5-2-12** of the Waterloo municipal code, which allows the mayor holding office to appoint the Chief of Police.

**continued employment by Governor did not convey implied contract, as Governor did not have authority to bind state and even if he did, Plaintiff had failed to establish through pleadings that oral assurances were "clear and definite" and supported by adequate consideration to give rise to property interest).**

In this case, Plaintiff alleges that he had conversations with the corporate authorities of the City and further alleges it was understood by both parties that he would not be removed as Chief of Police unless there were problems with his work performance. (Doc. 28, ¶ 31.) Alleging that this condition for removal was "understood by both parties," is not the same as pleading oral assurances. Even if Plaintiff had alleged that this "promise" was actually <u>spoken</u> to him by the City, such offer must be clear and definite so that "'an employee would reasonably believe that an offer had been made.'" ***Kiddy Brown*, 408 F.3d at 363 (citing *Duldulao v. St. Mary of Nazareth Hosp. Ctr.*, 115 Ill.2d 482, 505 N.E.2d 314, 317, 106 Ill. Dec. 8(1987)).**

In ***Kiddy-Brown*,** the Seventh Circuit found that Defendant Governor Blagojevich's alleged oral statement to Plaintiff that "if men and women working for the State of Illinois were satisfactorily performing necessary jobs, they would not be terminated by his administration," was "hardly clear and definite enough to support a reasonable belief that permanent employment [had] been offered." ***Id.* at 365.** Likewise, we should find that Plaintiff's alleged "mutual understanding" is not clear

and definite enough to meet the burden of proving an implied contract of continued employment giving rise to a property interest.

Therefore, Plaintiff's claim of a property interest created via implied contract must also be dismissed because any alleged implied contract would contravene established statutory law, and also because Plaintiff has failed to sufficiently plead the requirements to establish the existence of a valid implied contract.[5]

### 3.     Property Interest Created by Custom & Practice

In this portion of Count I of the Amended Complaint, Plaintiff alleges that he has a property interest in his employment based upon the fact that the City has allowed several former Chiefs to continue as either City police officers or City employees after removal. (Doc. 28 ¶¶ 34-42.) Because of this practice, Plaintiff alleges that the City has a "history, tradition, custom and practice of: (a) removing police chiefs only for just cause; (b) allowing police chiefs who have been removed from their position to work as police officers; and (c) allowing appointed officials to continue in their appointed positions upon the election of a new mayor." (*Id*. at ¶¶ 37-39.) Therefore, Plaintiff argues that this alleged custom and practice of the City gives rise to his property interest in continued employment and that he was deprived of this interest when they removed him without just cause or a hearing OR without

---

[5] Because Plaintiff has failed to show existence of an implied contract giving rise to a property right in continued employment as Chief of Police, the Court need not address whether governmental immunity applies in this instance.

offering him the option of continued employment as a City police officer. (*Id.* at ¶ 40.

Defendants, in the supporting memorandum to their Motion to Dismiss, argue that there is no legally cognizable theory that a property right can arise from "custom & practice," as alleged by Plaintiff. (Doc. 30, p. 6.) In Plaintiff's opposing brief, he cites the case of **Perry v. Sindermann, 408 U.S. 593 (1972),** in support of this custom and practice notion. (Doc. 32, pp. 8-9.) However, **Perry** is somewhat inapposite to Plaintiff's argument in that it does not explicitly hold that a property interest arises based on custom and practice of an employer.

In **Perry**, the Respondent was a professor employed over a number of years with Odessa Junior College pursuant to a series of one-year term contracts. ***Id.* at 594-95.** When the Board of Regents decided not to renew Respondent's employment contract, Respondent brought suit for (among other things) deprivation of his due process rights for failure of defendant to provide him with a pre-termination hearing. ***Id.*** Granting *certiorari*, the United States Supreme Court examined the issue of whether the college had a "de facto tenure program" that would have essentially granted Respondent tenure, thereby giving rise to a property interest in continued employment. ***Id.* at 599-600.**

This "de facto tenure program" appeared to be the creation of a provision in the college's official Faculty Guide,[6] coupled with certain guidelines promulgated by the Coordinating Board of the Texas College and University System "that provided that a person, like [Respondent], who had been employed as a teacher in the state college and university system for seven years or more ha[d] some form of job tenure."[7] ***Id.* at 600.** Therefore, the Court found that these guidelines created an "unwritten common law" effectively granting tenure to employees such as Respondent, and as such, determined that Respondent should "be given an opportunity to prove the legitimacy of his claim of such entitlement in light of 'the policies and practices of the institution.'" ***Id.* at 602-03 (citation omitted).**

"'A common law of employment is established through rules or 'mutually

---

[6] The provision in the college's Faculty Guide read as follows:

> **Teacher Tenure**: Odessa College has no tenure system. The Administration of the College wishes the faculty member to feel that he has permanent tenure as long as his teaching services are satisfactory and as long as he displays a cooperative attitude toward his co-workers and his superiors, and as long as he is happy in his work.

***Perry*, 408 U.S. at 600.**

[7] The guidelines as promulgated by the Coordinating Board of the Texas College and University System and relied upon by Plaintiff provide, in pertinent part:

> A. Tenure. Tenure means assurance to an experienced faculty member that he may expect to continue in his academic position unless adequate cause for dismissal is demonstrated in a fair hearing, following established procedures of due process . . . In the Texas public colleges and universities, this tenure system should have these components: (1) Beginning with appointment to the rank of full-time instructor . . . the probationary period for a faculty member shall not exceed seven years . . . .

***Perry*, 408 U.S. at 600.**

explicit understandings' and not solely through past practices of the employer.'" ***Crull v. Sunderman*, 384 F.3d 453, 464 (7th Cir. 2004) (citing *Hermes v. Hein*, 742 F.2d 350, 355 (7th Cir. 1984) (internal and other citations omitted**). Further, a mutual understanding cannot be established solely by past practices of an employer. ***Id.* at 468 (citing *Lawshe v. Simpson,* 16 F.3d 1475, 1480 (7th Cir. 1994) and *Hermes*, 742 F.2d at 355 ("[A] common law of employment is established through rules or mutually explicit understandings and not solely through the past practices of an employer.")**

In this case, Plaintiff does not point to any written policies or guidelines to in order to establish an "unwritten common law" giving him a property interest. Instead, Plaintiff attempts to argue that the City's alleged customs and practices regarding past police chiefs create an understanding supporting Plaintiff's argument that the cited municipal ordinances and state statutes give rise to a property interest (i.e., no removal except for cause.) (Doc. 32, p. 9.) Again, as the Court has already determined that the ordinances and statutes cited by the parties do not give rise to a property interest, Plaintiff cannot circumvent the plain language of the law.

Defendants further assert that state statute requires a return to rank of any police chief promoted out of the ranks but not re-appointed to that position under **65 ILCS 5/10-2.1-4.**[8] (Doc. 29, p. 7.) Because Plaintiff was not appointed "out of the ranks" of the Waterloo police department (Plaintiff was previously employed by the Illinois State Police before becoming Waterloo Chief of Police), Defendants argue and the Court agrees, that Plaintiff had no right to return to the police department as an officer "as perhaps did former chiefs." (*Id.* at 7.)

Therefore, even taking Plaintiff's allegations in a light most beneficial to him, his claim of a property right based upon "custom & practice" must be dismissed because he has failed to show the existence of the City-established policies and practices that would give Plaintiff a property interest in either continued employment or the right to retain employment with the City in a capacity other than Chief of Police.

C.  **COUNT II - DEPRIVATION OF A LIBERTY INTEREST WITHOUT DUE PROCESS**

In the previous Order issued by the Court regarding Defendants' Motion to Dismiss Plaintiff's Original Complaint (Doc. 27), the Court found that Plaintiff had

---

[8] **65 ILCS 5/10-2.1-4** reads, in pertinent part:

> If a member of the department is appointed chief of police or chief of the fire department prior to being eligible to retire on pension, he shall be considered as on furlough from the rank he held immediately prior to his appointment as chief. If he resigns as chief or is discharged as chief prior to attaining eligibility to retire on pension, he shall revert to and be established in whatever rank he currently holds, except for previously appointed positions, and thereafter be entitled to all the benefits and emoluments of that rank, without regard as to whether a vacancy then exists in that rank.

not plead sufficient allegations to show a deprivation of his liberty interest under the standards articulated by the Seventh Circuit. Therefore, the Court dismissed the count *without* prejudice, allowing Plaintiff to amend his claim.

In **Board of Regents v. Roth, 408 U.S. 564 (1972)**, the United States Supreme Court held that the state may infringe a plaintiff's liberty interest when, in declining to rehire an employee, it makes a "charge against him that might seriously damage his standing and associations in his community" that places his "good name, reputation, honor, or integrity . . . at stake" or when, in failing to rehire, it imposes on the plaintiff "a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." **Id. at 573**.

The Seventh Circuit has further interpreted **Roth** "to indicate that liberty interest may be threatened in two types of situations when the government removes someone from an employment position: "(1) the individual's good name, reputation, honor or integrity are at stake by such charges as immorality, dishonesty, alcoholism, disloyalty, Communism or subversive acts; or (2) the state imposes a stigma or other disability on the individual which forecloses other opportunities." **Townsend v. Vallas, 256 F.3d 661, 669-70 (7th Cir. 2001) (citing to Head v. Chicago Sch. Reform Bd. of Trustees, 225 F.3d 794, 801 (7th Cir. 2000) (other internal citations omitted))**. In other words, the deprivation of one's liberty interests in the employment context makes a person "'all but unemployable in the future.'" **Pleva v. Norquist, 195 F.3d 905, 915 (7th Cir. 1999) (citing Lawson**

***v. Sheriff of Tippecanoe County, Ind.*, 725 F.2d 1136, 1138 (7th Cir. 1984)).**

In his Amended Complaint, Plaintiff amends this count by alleging that "members of law enforcement community for at least 100 miles away from Waterloo, Illinois, have been told that plaintiff was discharged from his position as the Waterloo Chief of Police." (Doc. 28, ¶ 52.) Further, Plaintiff has added that because the City would not offer Plaintiff a position within the City police department after removal, as it did for the two former police chiefs, this gave the "appearance that the plaintiff was somehow not worthy of employment as a Waterloo Police officer . . . ." (*Id*. at ¶ 54.) Otherwise, Plaintiff's allegations for this count remain the same as stated in his original complaint.

Plaintiff has not plead that he has been, for all intents and purposes, "blacklisted" from employment in comparable jobs as a result of his removal by the City, making it virtually impossible for him to find a new job. ***See Townsend*, 256 F.3d at 669-70 (7th Cir. 2001) (citing Colaizzi *v. Walker*, 812 F.2d 304, 307 (7th Cir. 1987)).** In fact, Plaintiff has not so much as plead that he has attempted to find a comparable job and has been turned down by a prospective employer. Nor has Plaintiff plead any statements made by Defendants in regard to his removal that "suggest such charges as immorality, dishonesty, alcoholism, disloyalty, Communism or subversive acts . . . ." ***Townsend*, 256 F.3d at 669.**

In the brief in support their Motion to Dismiss, Defendants argue that Plaintiff has failed to sufficiently plead allegations required to properly state a claim

for deprivation of a liberty interest without due process. (Doc. 30, pp. 6-7.) Surprisingly, Plaintiff fails to respond to Defendants' argument on this matter. Accordingly, the Court must find that Plaintiff has abandoned his claim, as plead in Count II of his Amended Complaint, and therefore it should be dismissed. ***See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996) (finding that plaintiff abandoned claim after failing to respond to argument in defendant's summary judgment motion); *Gillespie v. City of Indianapolis*, 13 F. Supp. 2d 811, 826 (S.D. Ind. 1998) (granting defendant's motion to dismiss, finding that plaintiff failed to respond to defendants' arguments in his response brief).** However, even assuming that Plaintiff had vaguely responded to Defendants' argument in his opposition brief, and also construing the pleadings in a light most favorable to the Plaintiff, it is apparent to the Court that Plaintiff has failed to meet the pleading requirements in order to sufficiently state a claim under Count II and therefore, such claim must be dismissed.

    **D.    COUNTS III AND IV - REMAINING STATE LAW CLAIMS**

In pleading § 1983 claims in Counts I and II of Plaintiff's Amended Complaint, jurisdiction in this matter was proper under **28 U.S.C. § 1331** (federal question jurisdiction). However, the Court finds that Counts I and II of Plaintiff's Amended Complaint fail to state a claim for which relief can be granted and should thereby be dismissed, pursuant to **Fed. R. Civ. P. 12(b)(6)**. As such, federal question jurisdiction ceases to exist and the Court declines to exercise jurisdiction

over Plaintiff's remaining state law claims, as plead in Counts III and IV under the procedural allowances of **28 U.S.C. § 1367**. ***See Pugel v. Bd. of Trustees of the Univ. of Ill.*, 378 F.3d 659, 669(7th Cir. 2004) (citing to *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) for finding that "[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolv[e] them on the merits.").**

### III. <u>CONCLUSION</u>

The Court hereby **GRANTS** Defendants' Motion to Dismiss Plaintiff's Amended Complaint. Accordingly, Counts I and II of Plaintiff's Amended Complaint are **DISMISSED WITH PREJUDICE.** Plaintiff's state law claims, as plead in Counts III and IV of Plaintiff's Amended Complaint, are hereby **DISMISSED WITHOUT PREJUDICE**, so that Plaintiff may pursue them in state court. Lastly, the Court finds that any and all other currently pending motions filed by either of the parties in this case are hereby **MOOT**.

**IT IS SO ORDERED.**

Signed this 12th day of September, 2005.

/s/     David RHerndon
**United States District Judge**
